# EXHIBIT C



1    BILL LOCKYER, Attorney General
     of the State of California
2    TOM GREENE,
     Chief Assistant Attorney General
3    THEODORA BERGER,
     Senior Assistant Attorney General
4    JAMES POTTER Cal Bar No. 166992
     BRIAN HEMBACHER, Cal. Bar No. 90428
5    Deputy Attorneys General
     300 South Spring Street, Suite 1702
6    Los Angeles, CA 90013
     Telephone:  (213) 897-2638
7    Fax:        (213) 897-2802

8    Attorneys for Plaintiffs

9

FILED
CLERK, U.S. DISTRICT COURT
MAR - 6 2006
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

___X___ Priority
___X___ Send
_____ Clsd
___X___ Enter
___X___ JS-5/JS-6
_____ JS-2/JS-3

LODGED
CLERK, U.S. DISTRICT COURT
FEB - 8 2006
mn  10.35
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

10
11
12
13

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

13   CALIFORNIA DEPARTMENT OF
     TOXIC SUBSTANCES CONTROL and
14   the CALIFORNIA TOXIC
     SUBSTANCES CONTROL ACCOUNT,
15
16              Plaintiffs,
17        v.
18   AMERICAN HONDA MOTOR CO.,
     INC.; ANADARKO E&P COMPANY
19   LP; ATLANTIC RICHFIELD
     COMPANY; BAYER CROPSCIENCE
20   INC.; CHEMICAL WASTE
     MANAGEMENT, INC.; CHEVRON
21   ENVIRONMENTAL MANAGEMENT
     COMPANY; CITY OF LOS ANGELES,
22   ACTING BY AND THROUGH THE
     LOS ANGELES DEPARTMENT OF
23   WATER AND POWER;
     CONOCOPHILLIPS COMPANY;
24   DUCOMMUN AEROSTRUCTURES,
     INC.; EXXON MOBIL CORPORATION;
25   GENERAL MOTORS CORPORATION;
     HONEYWELL INTERNATIONAL INC.;
26   HUNTINGTON BEACH COMPANY;
     MCFARLAND ENERGY, INC.
27   NATIONAL STEEL AND
     SHIPBUILDING COMPANY;
28   NORTHROP GRUMMAN
     CORPORATION; QUEMETCO, INC.;

No. CV05-7746 CAS(JWJx)

AMENDED CONSENT DECREE

ENTERED
CLERK, U.S. DISTRICT COURT
MAR - 9 2006
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

DOCKETED ON CM
MAR  8 2006
BY            003

AMENDED CONSENT DECREE

LA/40326858.3

PAGE 2/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | ROHR, INC.; SHELL OIL COMPANY; SOUTHERN CALIFORNIA EDISON COMPANY; THUMS LONG BEACH COMPANY; UNION CARBIDE CORPORATION; UNION OIL COMPANY OF CALIFORNIA; WASHINGTON MUTUAL BANK; WASTE MANAGEMENT COLLECTION AND RECYCLING, INC.; WESTERN WASTE INDUSTRIES; and XEROX CORPORATION,<br><br>                    Defendants. |

### AMENDED CONSENT DECREE

This Amended Consent Decree ("Consent Decree") is made and entered into by and among the Plaintiffs and the Settling Defendants, as defined in Paragraphs 3.16 and 3.17 herein (collectively, the "Parties"). This Consent Decree resolves the liability of the Settling Defendants for Past Response Costs, Future Interim Response Costs and Future DTSC Oversight Costs as defined herein incurred by the Plaintiff Department of Toxic Substances Control ("DTSC") at the Facility, as defined herein, and obligates the Settling Defendants to do certain work at the Subject Property as specified herein. This Consent Decree does not affect in any way the Plaintiffs' claims against any persons or entities other than those bound by the Consent Decree (as defined in Paragraph 10.20), nor does it resolve any claims against the parties bound unless expressly addressed in this Consent Decree.

### INTRODUCTION

Concurrent with the lodging of this Consent Decree, the Plaintiffs are filing a complaint against the Settling Defendants for recovery of Past Response Costs as defined herein and the performance of certain injunctive relief pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9607, as amended ("CERCLA"), and California Health and Safety Code section 25358.3(e) in connection with alleged releases of

2
CONSENT DECREE

LA/40326858.3

PAGE 3/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1   hazardous substances into the environment at and from a closed hazardous waste

2   landfill in West Covina, California, as described herein ("Complaint").

3       Subject to the covenants, conditions and reservations of rights in this

4   Consent Decree, this Consent Decree resolves the claims asserted in the

5   Complaint.

6       The Plaintiffs and Settling Defendants agree, and this Court by entering this

7   Consent Decree finds, that this Consent Decree has been negotiated by the Parties

8   in good faith and that settlement of this matter and entry of this Consent Decree is

9   intended to avoid prolonged and complicated litigation between the Parties, is the

10  most appropriate means to resolve the matters covered herein, and is fair,

11  reasonable and in the public interest.

12      **NOW, THEREFORE,** with the consent of the Parties to this Consent

13  Decree, it is hereby **ORDERED, ADJUDGED AND DECREED**:

14  I.   <u>JURISDICTION</u>

15      1.1   This Consent Decree is entered into by the Parties pursuant to the

16  Plaintiffs' authority under Section 107 of CERCLA, 42 U.S.C. § 9607, and

17  California Health and Safety Code Section 25358.3(e).  The Court has jurisdiction

18  over the subject matter of this action pursuant to 28 U.S.C. § 1331 and CERCLA,

19  42 U.S.C. § 9601 *et seq.*, and supplemental jurisdiction over claims arising under

20  the laws of the State of California pursuant to 28 U.S.C. § 1367(a).  Solely for

21  purposes of this Consent Decree, the Settling Defendants waive all objections and

22  defenses they may have to the jurisdiction of the Court or to venue in this district

23  or to the Plaintiffs' rights to enforce this Consent Decree.

24  II.  <u>BACKGROUND</u>

25      2.1   This Consent Decree relates to a 583-acre landfill facility located at

26  2210 South Azusa Avenue, West Covina, Los Angeles County, California 91792

27  ("Facility").  The Facility contains a closed Class I hazardous waste landfill, an

28  inactive Class III municipal landfill and related facilities.  A map and a legal

---

CONSENT DECREE

LA/40326858.3

PAGE 4/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    description of the 583-acre Facility are attached as Exhibits A-1 and A-2,

2    respectively.  Non-party BKK Corporation (BKK) owns the portion of the Facility

3    that is commonly described as Parcel 3, which includes the Class I and Class III

4    landfills.  Non-party City of West Covina owns the balance of the 583-acre

5    property, which is commonly described as Parcels 1 and 2.

6        2.2    Regulatory Status.  On Parcel 3, BKK is the owner and operator of the

7    following: (a) the closed "Class I Landfill"; (b) the inactive Class III municipal

8    landfill that is in the process of closing; (c) an operating leachate treatment plant

9    (LTP); and (d) the inactive "Area D" disposal area.  Post-closure operation,

10   maintenance and monitoring of the Class I Landfill, and operation of the LTP, are

11   primarily regulated by DTSC pursuant to the Health and Safety Code and the

12   California Code of Regulations, title 22.

13       2.3    On October 18 and 20, 2004, BKK notified DTSC that for financial

14   reasons BKK would no longer be able to perform required post-closure care of the

15   Class I Landfill, or operate the LTP, after November 17, 2004.  As a result, DTSC

16   hired a contractor to conduct emergency response activities at the Facility

17   beginning on November 18, 2004.  These activities were and continue to be

18   necessary to ensure continuous maintenance and operation of systems that are

19   essential to protect public health, safety and the environment.

20       2.4    On December 2, 2004, DTSC issued an Imminent and Substantial

21   Endangerment Determination and Order and Remedial Action Order Docket No.

22   I/SE-D-04/05-004 ("ISE Order"), to BKK and 50 other respondents who are

23   alleged to have disposed of waste at the Class I Landfill or to be prior owners or

24   operators of the Facility (as defined in Paragraph 3.7 herein) that includes the Class

25   I Landfill.  The ISE Order required the respondents to that Order to perform certain

26   response actions and to reimburse DTSC for certain response costs.  All of the

27   Settling Defendants, except ConocoPhillips Company, Northrop Grumman

28   Corporation, Waste Management Collection and Recycling, Inc, Huntington Beach

4
CONSENT DECREE

LA/40326858.3

PAGE 5/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    Company, McFarland Energy, Inc., and Union Carbide Corporation are named as

2    respondents in the ISE Order.

3        2.5    Interim Settlement Agreements.  On March 14, 2005, April 15, 2005,

4    May 16, 2005, June 15, 2005, July 12, 2005 and August 15, 2005, DTSC and

5    Settling Defendants entered into six interim settlement agreements, whereby

6    Settling Defendants paid to DTSC $3 million to partially reimburse DTSC for the

7    Past Response Costs that it has incurred with respect to the Facility.  In

8    consideration for these interim payments, and the promises by Settling Defendants

9    contained in this Consent Decree, DTSC agreed to this Consent Decree and has

10    deemed the Settling Defendants to be in compliance with the ISE Order as set forth

11    herein.  The Interim Settlement Agreements are incorporated herein by reference.

12        2.6    The Past Response Costs, Future Interim Response Costs and Future

13    DTSC Oversight Costs incurred by DTSC relating to the performance and

14    oversight of work relating to the Facility and paid to DTSC by the Settling

15    Defendants pursuant to this Consent Decree constitute necessary costs of response

16    as that term is defined in 42 U.S.C. § 9601(25).  These costs were incurred by

17    DTSC in a manner not inconsistent with the National Contingency Plan.

18        2.7    Consent Decree.  This Consent Decree provides for the performance

19    of certain operation, maintenance and monitoring activities at the Subject Property

20    until March  15, 2008, or two years from the date the Settling Defendants fully

21    commence the Essential Activities and Critical Tasks and other work pursuant to

22    Section IV herein, whichever is later, for the reimbursement of certain DTSC

23    response costs with respect to the Facility, and the dismissal, without prejudice, of

24    the ISE Order against the Settling Defendants.  This Consent Decree also provides

25    covenants not to sue and contribution protection, standstill agreements and a

26    tolling agreement with respect to enforcement activity and litigation among the

27    Parties concerning the Facility, to enable the Parties to work collaboratively to

28    identify additional entities to participate in the performance and/or funding of

5

**CONSENT DECREE**

LA/4032685B.3

PAGE 6/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1   activities at the Subject Property and to work towards a long-term program to

2   address conditions at the Subject Property.

3       2.8    No Admissions. By entering into this Consent Decree or by taking

4   any action in accordance with its provisions, each Settling Defendant does not

5   admit any allegations, findings, determinations or conclusions contained in the ISE

6   Order, the Complaint or this Consent Decree, including without limitation that it

7   sent, transported or arranged for disposal of any hazardous substances to or at the

8   Class I Landfill, or that it owned or operated the Facility that includes the Class I

9   Landfill, and does not admit any liability with respect to the Facility. Nothing in

10   this Consent Decree shall be construed as an admission by any Settling Defendant

11   of any issue of law or fact. Except as specifically provided for herein, nothing in

12   this Consent Decree shall prejudice, waive, or impair any right, remedy, or defense

13   that each Settling Defendant may have against any entity. Each Settling Defendant

14   agrees to comply with and be bound by the terms of this Consent Decree and

15   further agrees that it will not contest the basis or validity of this Consent Decree in

16   any action to enforce it.

17   III.    DEFINITIONS

18       3.1    Unless otherwise expressly provided herein, terms used in this

19   Consent Decree that are defined in CERCLA or in regulations promulgated under

20   CERCLA shall have the meaning assigned to them therein. Whenever terms listed

21   below are used in this Consent Decree or in any attachments or exhibits hereto, the

22   following definitions shall apply:

23       3.2    "Class I Landfill" means the closed hazardous waste landfill located at

24   2210 South Azusa Avenue, West Covina, Los Angeles County, California 91792

25   that is shown on the map that is attached as Exhibit A-1. Together, the Class I

26   Landfill and the Leachate Treatment Plant are also referred to in this Consent

27   Decree as part of the "Subject Property."

28

6
CONSENT DECREE

LA/40326858.3

PAGE 7/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1     3.3   "Class III Landfill" shall mean that municipal landfill also located at

2    2210 South Azusa Avenue, West Covina, Los Angeles County, California 91792,

3    which is shown on the map in Exhibit A-1.

4     3.4   "Day" shall mean a calendar day unless expressly stated to be a

5    working day. "Working day" shall mean a day other than a Saturday, Sunday, or

6    Federal holiday. In computing any period of time under this Consent Decree,

7    where the last day would fall on a Saturday, Sunday, or Federal holiday, the period

8    shall run until the close of business of the next working day.

9     3.5   "Effective Date" shall mean the date that this Consent Decree is

10   entered by the Court.

11     3.6   "Excluded Work" shall mean (a) an assessment of the storm drain

12   system and repair/replacement of storm drain components as described in

13   Paragraph 5.1.3 of the ISE Order; and (b) improvement of the upper drainage basin

14   as described in Item 2 of Exhibit C of the same ISE Order.

15     3.7   "Facility" shall mean the 583-acre landfill facility located at 2210

16   South Azusa Avenue, West Covina, California and described in Exhibits A-1 and

17   A-2. The Facility contains a closed Class I hazardous waste landfill, an inactive

18   Class III municipal landfill that is in the process of closing, the Leachate Treatment

19   Plant as defined herein and related facilities. For purposes of Paragraphs 2.8, 3.15,

20   4.7, 7.5, and 8.5, Facility shall also include contiguous areas to the Facility where

21   hazardous substances emanating from the Landfills have come to be located.

22     3.8   "Future DTSC Oversight Costs" shall mean all direct and indirect

23   costs of overseeing this Consent Decree, including but not limited to payroll costs,

24   travel costs, and laboratory costs, incurred by DTSC in reviewing, revising,

25   modifying, commenting on or approving plans, reports and other items pursuant to

26   this Consent Decree, and verifying the Work to Be Performed after a) the Effective

27   Date of this Consent Decree or b) the date upon which the Settling Defendants

28

LA/40326858.3

PAGE 8/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1  fully commence the Essential Activities and Critical Task and other work pursuant

2  to Section IV herein, whichever is earlier.

3      3.9   "Future Interim Response Costs" shall mean all costs incurred by

4  DTSC in response to conditions at the Facility from the date of lodging of this

5  Consent Decree through March 15, 2006 or the date that the Settling Defendants

6  fully commence the Essential Activities and Critical Tasks and other work

7  pursuant to Section IV herein, whichever is later.

8      3.10   "Hazardous Substances" shall have the meaning set forth in CERCLA

9  Section 101(14), 42 U.S.C. § 9601(14).

10     3.11   "Interim Settlement Agreements" shall mean the six interim

11  agreements entered into by DTSC and Settling Defendants on March 14, 2005,

12  April 15, 2005, May 16, 2005, June 15, 2005, July 12, 2005, and August 15, 2005,

13  referred to in Paragraph 2.5.

14     3.12   "Leachate Treatment Plant" (or "LTP") means the leachate treatment

15  plant that is located on the Class I Landfill.  Together, the Class I Landfill and the

16  LTP are also referred to in this Consent Decree as part of the "Subject Property".

17     3.13   "National Contingency Plan" or "NCP" shall refer to the National Oil

18  and Hazardous Substances Pollution Contingency Plan promulgated pursuant to

19  Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300.

20     3.14   "Parties" shall mean Plaintiffs and the Settling Defendants.

21     3.15   "Past Response Costs" shall mean all costs incurred by DTSC in

22  response to conditions at the Facility through the date of lodging of the Consent

23  Decree, including costs for which DTSC has been reimbursed pursuant to the

24  Interim Settlement Agreements and this Consent Decree.

25     3.16   "Plaintiffs" or "DTSC" shall mean the California Department of

26  Toxic Substances Control and the following state accounts, to the extent that funds

27  from those accounts have been, or will be expended on behalf of DTSC at the

28  Facility:

8

CONSENT DECREE

LA/40326858 3

PAGE 9/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1        (a)    The California Hazardous Substance Account;

2        (b)    The California Hazardous Waste Control Account;

3        (c)    The California Toxic Substances Control Account; and

4        (d)    The California Site Remediation Account.

5    3.17   "Settling Defendants" shall mean the parties identified as Defendants

6    in the caption above.  For purposes of Paragraph 2.8, Section VII, and Section

7    VIII, "Settling Defendants" also shall mean Defendants' corporate predecessors-in-

8    interest, successors-in-interest and affiliated companies identified in Exhibit G.

9        3.18   "Subject Property" shall mean the Class I Landfill, the LTP, service

10   roads and related pollution control equipment located at 2210 South Azusa

11   Avenue, West Covina, Los Angeles County, California 91792.

12       3.19   "Tolling Termination Date" shall mean the date upon which the

13   Tolling Agreement provided for in Paragraph 7.11 terminates.  The Tolling

14   Termination Date shall be the earlier of: (a) four (4) years from the Effective Date;

15   or (b) sixty (60) days after a complaint is served on the Settling Defendants

16   requiring the performance of work, reimbursement of cleanup costs, or

17   contribution towards costs associated with cleanup of the Facility.

18   IV.    SETTLING DEFENDANTS' WORK TO BE PERFORMED AND OTHER
19          OBLIGATIONS

20       4.1    Work to Be Performed.  Settling Defendants shall undertake the

21   following response actions (Work to Be Performed) set forth below.

22           4.1.1  Essential Activities.  No later than thirty (30) days after the date

23   of lodging of this Consent Decree, Settling Defendants shall submit to DTSC a

24   Quality Assurance Project Plan and Health and Safety Plan developed in

25   accordance with Exhibit E concerning performance of the operation, maintenance

26   and monitoring activities at the Subject Property referred to as Essential Activities

27   and described in Exhibit C.  No later than thirty (30) days after lodging of this

28   Consent Decree, Settling Defendants shall commence preparations for undertaking

CONSENT DECREE

LA/40326858.3

PAGE 10/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1  the Essential Activities (Exhibit C) on a day-to-day basis. On or before fourteen

2  (14) days after the Effective Date of this Consent Decree, Settling Defendants shall

3  commence the Essential Activities described in Exhibit C. Settling Defendants

4  shall perform this work until March 15, 2008, or two years from the date the

5  Settling Defendants fully commence the Essential Activities and Critical Tasks and

6  other work pursuant to Section IV herein, whichever is later.

7          4.1.2 <u>Critical Tasks</u>. Within five (5) days of the date of the lodging

8  of this Consent Decree, Settling Defendants shall submit to DTSC a workplan and

9  implementation schedule that outlines how and when Settling Defendants will

10 perform and complete the primary activities within the tasks identified in Exhibit D

11 (the Critical Tasks Workplan). Settling Defendants will perform and complete the

12 primary activities within the tasks identified in Exhibit D (the Critical Tasks) in

13 accordance with the schedule in the DTSC-approved workplan and shall

14 commence conducting the primary activities on or before 14 days after the

15 Effective Date of this Consent Decree, provided that DTSC approves the workplan

16 on or before the Effective Date. The Critical Tasks Workplan shall include

17 detailed descriptions of the task to be performed, the information or data needed

18 for the task, and the deliverables that will be submitted to DTSC. A Quality

19 Assurance Project Plan and Health and Safety Plan developed in accordance with

20 Exhibit E of this Consent Decree shall be included with the Critical Tasks

21 Workplan. The Critical Tasks Workplan shall identify each activity within the

22 Critical Tasks to be performed in order of priority.

23         4.1.3 <u>Work Consistent with Requirements</u>. Subject to Paragraph 4.6

24 herein, all Work to Be Performed pursuant to this Consent Decree shall be

25 consistent with the requirements of all DTSC-approved workplans, Chapter 6.8

26 (commencing with Section 25300), Division 20 of the Health and Safety Code, and

27 any other applicable state or federal statutes and regulations, including without

28

10

CONSENT DECREE

LA/40326858.3

PAGE 11/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1  limitation, the NCP, and applicable DTSC and U.S. Environmental Protection

2  Agency (U.S. EPA) guidance documents.

3      4.1.4  To the extent that there is a conflict between the language in

4  any Exhibit and the terms of this Consent Decree, the terms of this Consent Decree

5  shall control.

6      4.1.5  Upon approval by DTSC of the work performed by Settling

7  Defendants under this Consent Decree and if all payments required to be made

8  pursuant to this Consent Decree have been paid, said work will be deemed

9  consistent, and in accordance with the NCP.

10      4.1.6  Public Participation Activities (Community Relations).  Settling

11  Defendants shall cooperate with and support DTSC in its efforts to provide

12  meaningful public participation in response actions pursuant to Health and Safety

13  Code Sections 25356.1 and 25358.7, DTSC's most current Public Participation and

14  Policy Guidance Manual and the Public Participation Plan.  These activities shall

15  include, but are not limited to, assisting in the development and distribution of fact

16  sheets; public meetings; and the development and publishing of public notices.

17      4.2    California Environmental Quality Act (CEQA).  Upon DTSC request,

18  Settling Defendants shall submit any non-privileged information deemed necessary

19  by DTSC to facilitate DTSC's compliance with the California Environmental

20  Quality Act (CEQA).

21      4.3    Stop Work Order.  In the event that DTSC determines that any

22  activity (whether or not pursued in compliance with this Consent Decree)

23  conducted by Settling Defendants may pose an imminent or substantial

24  endangerment to the health or safety of people or to the environment, DTSC may

25  order Settling Defendants to stop further implementation of this Consent Decree

26  for such period of time needed to abate the endangerment.  In addition, in the event

27  that DTSC determines that any of Settling Defendants' activities (whether or not

28  pursued in compliance with this Consent Decree) is proceeding without DTSC

CONSENT DECREE

11

LA/40328858.3

PAGE 12/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1   authorization, DTSC may order Settling Defendants to stop further implementation

2   of such activity for such period of time needed to obtain DTSC authorization, if

3   such authorization is appropriate.  Any deadline in this Consent Decree directly

4   affected by a Stop Work Order, issued pursuant to this Paragraph, shall be

5   extended for the term of the Stop Work Order.

6        4.4    Emergency Response Action/Notification.  In the event of any

7   occurrence, event, or condition that arises at the Subject Property after a) the

8   Effective Date of this Consent Decree or b) the date upon which the Settling

9   Defendants fully commence the Essential Activities and Critical Task and other

10  work pursuant to Section IV herein, whichever is earlier, that constitutes a material

11  change, that represents an emergency (including, but not limited to, fire,

12  earthquake, explosion, landslide, or imminent or immediate human exposure to a

13  hazardous substance caused by the release or threatened release of a hazardous

14  substance) and that presents a risk to public health, and safety or the environment,

15  Settling Defendants shall immediately take all appropriate actions to respond to

16  that emergency.  The Settling Defendants shall also immediately notify the DTSC

17  Project Coordinator of the occurrence, event, or condition and of the steps the

18  Settling Defendants have taken and propose to take in response thereto.  Any

19  action taken by the Settling Defendants shall be performed in consultation with the

20  DTSC Project Coordinator and in accordance with all applicable provisions of this

21  Consent Decree.  Within seven (7) days of the onset of such an occurrence, event,

22  or condition, Settling Defendants shall furnish a report to DTSC, signed by Settling

23  Defendants' Project Coordinator, setting forth the occurrence, event, or condition

24  that occurred and the measures taken in the response thereto.  In the event that

25  Settling Defendants fail to take appropriate response and DTSC takes the action

26  instead, Settling Defendants shall be subject to liability to DTSC for all costs of the

27  response action.  Nothing in this Paragraph shall be deemed to limit any other

28  notification requirement to which Settling Defendants may be subject, nor any

CONSENT DECREE

LA/40328858.3

PAGE 13/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    defenses that the Settling Defendants may have with respect to any action brought

2    by DTSC to recover the costs of the response action taken by it pursuant to this

3    Paragraph. Nothing in this Paragraph shall require the Settling Defendants to

4    perform or complete the performance of Excluded Work.

5        4.5    Settling Defendants' Insurance. At least seven (7) days prior to

6    commencement of any work under this Consent Decree, Settling Defendants shall

7    provide copies of insurance policies or other evidence satisfactory to DTSC that

8    demonstrates that any contractor or subcontractor hired by the Settling Defendants

9    to implement the Work to be Performed pursuant to this Consent Decree maintains

10   in force for the duration of this Consent Decree insurance equivalent to the

11   following:

12       (a)    commercial general liability (CGL) insurance with a combined

13   single limit of at least $1 million per occurrence;

14       (b)    automotive liability insurance with combined single limits of at

15   least $2 million per accident;

16       (c)    workers' compensation and employers' liability coverage of at

17   least $1 million for employees engaged in the implementation of this Consent

18   Decree;

19       (d)    pollution liability insurance with a combined single limit of at

20   least $1 million per occurrence; and

21       (e)    excess/umbrella liability coverage in the aggregate amount of

22   $10 million.

23       4.6    Owner/Operator Status. The Plaintiffs agree, and by entering this

24   Consent Decree the Court finds, that the Settling Defendants shall not be

25   considered owners or operators of the Facility, or arrangers for disposal or

26   treatment of waste at the Facility solely as a result of their performance of the

27   Work to Be Performed under this Consent Decree. BKK is the current owner and

28   operator of the Subject Property and operator of the Facility. Nothing in this

13

CONSENT DECREE

LA/40326858 3

PAGE 14/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1   Consent Decree shall relieve BKK of its statutory and regulatory obligations as the

2   owner/operator of the Subject Property and operator of the Facility, or require

3   Settling Defendants to assume those obligations, including compliance with all

4   applicable laws and permits with respect to the landfills, signing manifests for

5   waste generated at the LTP, public notices under California Health and Safety

6   Code Sections 25249.5-25249.13 and other reporting obligations that are the

7   responsibility of BKK as the owner and operator of the Subject Property, and

8   operator of the Facility.

9       4.7    Future Interim Response Costs. The Settling Defendants shall pay

10  DTSC  $500,000 per calendar month (prorated as appropriate) in partial

11  reimbursement to  DTSC for response costs incurred by DTSC with respect to the

12  Facility after the lodging of and prior to the Effective Date of this Consent Decree.

13  The first of these payments shall be made within thirty (30) days of the lodging of

14  this Consent Decree and each subsequent payment shall be made on the 15th of

15  each month.  However, Settling Defendants' obligation to make these payments

16  shall terminate on December 15, 2005.

17      4.8    Payment of Future DTSC Oversight Costs. The Settling Defendants

18  shall reimburse DTSC for Future DTSC Oversight Costs incurred after a) the

19  Effective Date of this Consent Decree or b) the date upon which the Settling

20  Defendants fully commence the Essential Activities and Critical Task and other

21  work pursuant to Section IV herein, whichever is earlier, to oversee the activities

22  of Settling Defendants and their agents under this Consent Decree, in the sum of

23  $50,000 per month until March 15, 2008 or two years from the date the Settling

24  Defendants fully commence the Essential Activities and Critical Tasks and other

25  work pursuant to Section IV herein, whichever is later.  Such payments shall begin

26  30 days after a) the Effective Date of this Consent Decree or b) the date upon

27  which the Settling Defendants fully commence the Essential Activities and Critical

28  Task and other work pursuant to Section IV herein, whichever is earlier, and each

14

CONSENT DECREE

LA/40326858.3

PAGE 15/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    subsequent payment shall be made on the 15th of each month thereafter.  In the

2    event that the payments required by this Paragraph are not made on a timely or

3    complete basis, Settling Defendants shall pay interest on the unpaid balance,

4    calculated at the rate of return earned on investment in the Surplus Money

5    Investment Fund pursuant to section 16475 of the Government Code.  The interest

6    shall accrue from the date the payment was due, through the date of Settling

7    Defendants' payment.  Payments of interest under this Paragraph shall be in

8    addition to such other remedies or sanctions available to Plaintiffs by virtue of

9    Settling Defendants' failure to make timely payments under this Section.  Settling

10   Defendants shall make all payments required by this Consent Decree in the manner

11   described in Paragraph 10.15.

12            4.8.1  Documentation of Future DTSC Oversight Costs.  After a) the

13   Effective Date of this Consent Decree or b) the date upon which the Settling

14   Defendants fully commence the Essential Activities and Critical Task and other

15   work pursuant to Section IV herein, whichever is earlier, DTSC shall provide

16   Settling Defendants with a Summary by Activity Report on a quarterly basis,

17   documenting the Future DTSC Oversight Costs that have been incurred by DTSC.

18   In the event that DTSC incurs less than $50,000 per month in Future DTSC

19   Oversight Costs during the previous quarter, Settling Defendants shall receive a

20   credit for any overpayment against future payments to be made pursuant to

21   Paragraph 4.8.

22            4.9    Reimbursement of Past Response Costs.  As described in Paragraph

23   2.5, the Settling Defendants have reimbursed DTSC for certain of its Past

24   Response Costs incurred through the lodging of this Consent Decree in the amount

25   of three million dollars ($3,000,000.00).  The Settling Defendants shall pay DTSC

26   an additional $ 750,000 in reimbursement of  certain of DTSC's Past Response

27   Costs within three (3) working days of the lodging of this Consent Decree.

28

15

CONSENT DECREE

LA/40326858.3

PAGE 16/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

V.    AGREEMENTS BY DTSC

    5.1    Postclosure Insurance Reimbursement.

        5.1.1  For purposes of California Code of Regulations, title 22, sections 66264.145 and 66265.145, DTSC authorizes Settling Defendants to perform certain postclosure care of the Class I Landfill by conducting the Work to Be Performed that is related to postclosure care of the Class I Landfill under this Consent Decree until March 15, 2008 or two years from the date the Settling Defendants fully commence the Essential Activities and Critical Tasks and other work pursuant to Section IV herein, whichever is later.  As persons authorized to perform postclosure care of the Class I Landfill, Settling Defendants shall be entitled to submit a claim for reimbursement of costs incurred in performing the work pursuant to this Consent Decree from Steadfast Insurance Company Policy No. PLC 7969053-04 for postclosure care expenditures by submitting itemized bills to DTSC pursuant to California Code of Regulations, title 22, sections 66264.145 (e) and 66265.145 (d) as applicable and Exhibit F of this Consent Decree.  Settling Defendants shall submit the reimbursement request at the close of each annual coverage cycle (May 31) and shall submit only one reimbursement request for each reimbursement cycle during the period covered by this Consent Decree.  Provided that Settling Defendants perform the work specified in this Consent Decree, they shall be entitled to the entire insurance proceeds for each reimbursement cycle (approximately $1,340,000) minus up to $120,000, on a first priority basis, for the 2005 (June 1, 2005 through May 31, 2006) and the 2006 (June 1, 2006 through May 31, 2007) cycles.  For work performed by the Settling Defendants after May 31, 2007, Settling Defendants shall be entitled on a first priority basis to a monthly pro-rata share of an amount equal to the entire insurance proceeds for the 2007-2008 reimbursement cycle minus up to $120,000 based on the duration of work performed by the Settling Defendants pursuant to this Consent Decree.  Settling Defendants shall be entitled to those costs that qualify

16

CONSENT DECREE

LA/40326858.3

PAGE 17/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    for reimbursement under California Code of Regulations, title 22, sections

2    66264.145 or 66265.145 as applicable. After Settling Defendants submit their

3    request, DTSC agrees to review each reimbursement request within sixty (60) days

4    of submission and, pursuant to the California Code of Regulations, title 22,

5    sections 66264.145 (e) or 66265.145 (d) as applicable, approve the reimbursement

6    request if it meets the requirements of the regulations and the costs are eligible

7    postclosure expenditures. Exhibit F provides the protocol for submittal of said

8    requests for reimbursement.

9        5.1.2  If all or part of the remaining $120,000 of the insurance

10   proceeds (per reimbursement cycle) is not approved for reimbursement to BKK by

11   DTSC, such proceeds shall be made available to reimburse the Settling Defendants

12   pursuant to the terms of Paragraph 5.1.1.

13       5.1.3  DTSC shall not be liable for any denial of reimbursement by

14   Steadfast Insurance Company or its successor or by a court. DTSC agrees to

15   provide non-privileged information in its possession to the Settling Defendants

16   necessary for securing reimbursement from Steadfast as authorized pursuant to

17   Paragraph 5.1.

18       5.2    Site Coordination. DTSC agrees to work with Settling Defendants

19   and other relevant entities to achieve a coordinated approach for all of the activities

20   to be conducted at the Facility during the term of this Consent Decree.

21       5.3    Termination of ISE Order. Within 7 (seven) days of entry of this

22   Consent Decree, DTSC will dismiss without prejudice the ISE Order, as against

23   the Settling Defendants. DTSC reserves the right to issue any other administrative

24   order against Settling Defendants with respect to the Facility, after the termination

25   of this Consent Decree.

26   VI.   DUE CARE/COOPERATION

27       6.1    Subject to Paragraph 4.6 above, the Settling Defendants shall exercise

28   due care in performing work under this Consent Decree, and shall perform the

17

CONSENT DECREE

LA/40326858.3

PAGE 18/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    work required by this Consent Decree in compliance with all applicable local,

2    state, and federal laws and regulations. Nothing in this Paragraph shall be deemed

3    to (a) relieve BKK of the obligation to comply with any local, state, and federal

4    laws and regulations applicable to it or permits issued to it with respect to the

5    Subject Property or the Class III Landfill, or (b) require Settling Defendants to

6    perform the obligations of BKK as owner and operator of the Facility to comply

7    with any such laws, regulations or permits.

8    VII.   COVENANTS NOT TO SUE AND RESERVATIONS OF RIGHTS

9        7.1    DTSC's Covenant Not to Sue. In consideration of the actions that

10   will be performed and the payments that have been and will be made by Settling

11   Defendants under the terms of this Consent Decree and subject to Paragraph 7.6

12   (DTSC's Reservation of Rights) of this Consent Decree, DTSC covenants not to

13   sue or take administrative action against Settling Defendants: 1) for the

14   obligations set forth in the ISE Order from December 9, 2004 through the date the

15   ISE Order is dismissed with respect to the Settling Defendants; 2) for the

16   obligation to conduct the Work to Be Performed pursuant to this Consent Decree

17   and described in Exhibits C and D; 3) for Excluded Work as described herein; 4)

18   for recovery of Future DTSC Oversight Costs incurred by DTSC as described

19   herein; 5) for DTSC Past Response Costs as described herein; and 6) for Future

20   Interim Response Costs as described herein.

21       7.2    Nothing in this Consent Decree shall preclude DTSC from seeking the

22   recovery of any response cost not recovered under this Consent Decree from any

23   entity not a party to this Consent Decree, including but not limited to, Past

24   Response Costs and Future DTSC Oversight Costs not paid by Settling

25   Defendants.

26       7.3    Nothing in this Consent Decree shall preclude DTSC from seeking

27   recovery of any response costs from the Settling Defendants incurred after the

28

18

CONSENT DECREE

LA/40326858.3

1   termination of this Consent Decree and not otherwise included in the Covenant Not

2   to Sue in Paragraph 7.1 above.

3       7.4   The Covenant Not to Sue set forth in Paragraph 7.1 above shall take

4   effect upon the Effective Date of this Consent Decree. This covenant not to sue is

5   conditioned upon the complete and satisfactory performance by Settling

6   Defendants of all obligations under this Consent Decree, including, but not limited

7   to, performance of the Work to Be Performed pursuant to Paragraph 4.1, and full

8   payment of certain Past Response Costs, Future DTSC Oversight Costs, and Future

9   Interim Response Costs pursuant to Paragraphs 4.7, 4.8 and 4.9. This covenant not

10   to sue extends only to Settling Defendants and does not extend to any other person

11   or entity.

12       7.5   <u>DTSC's Standstill</u>. DTSC agrees not to take any additional

13   administrative or judicial actions against the Settling Defendants with respect to

14   the Facility until the earlier of: (a) termination of this Consent Decree; or (b) the

15   date a complaint is served on DTSC requiring the performance of work,

16   reimbursement of cleanup costs, or contribution towards costs associated with

17   cleanup of the Subject Property. This Paragraph does not limit DTSC's reserved

18   rights under Paragraph 7.6(a) below.

19       7.6   <u>DTSC's Reservation of Rights</u>. The Covenant Not to Sue set forth in

20   Paragraph 7.1 above does not pertain to any matters other than those expressly

21   specified therein. DTSC reserves and this Consent Decree is without prejudice to

22   all rights against Settling Defendants with respect to all other matters, including

23   but not limited to, the following:

24       (a)   claims based on a failure by Settling Defendants and their

25   successors or assignees to meet a requirement of or to otherwise enforce this

26   Consent Decree;

27       (b)   criminal liability;

28

19

CONSENT DECREE

LA/40326858.3

PAGE 20/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1        (c)    liability for damages for injury to, destruction of, or loss of

2  natural resources, and for the costs of any natural resource damage assessment

3  incurred by agencies;

4        (d)    except as may otherwise be provided for herein, liability for

5  violations of local, state or federal law or regulations;

6        (e)    except as may otherwise be provided for herein, liability for

7  performance of response actions and/or work, other than the Work to Be

8  Performed pursuant to Paragraph 4.1, the work identified in Exhibits C and D, and

9  the Excluded Work;

10        (f)    liability for DTSC response costs, other than Future DTSC

11  Oversight Costs, Interim Future Response Costs, and Past Response Costs;

12        (g)    except as may otherwise be provided for herein, any liability

13  arising from past, present or future ownership, operation, disposal, release, or

14  threat of release of hazardous substances, pollutants or contaminants, at other sites

15  besides the Facility;

16        (h)    except as may otherwise be provided for herein, liability based

17  upon the Settling Defendants' ownership or operation of the Facility, or upon the

18  Settling Defendants' transportation, treatment, storage, or disposal, or the

19  arrangement for the transportation, treatment, storage, or disposal of any hazardous

20  substances, pollutants or contaminants at or in connection with the Facility.

21    7.7    Except as provided in this Consent Decree, nothing herein shall limit

22  the power and authority of DTSC or any other State agency to take, direct, or order

23  · all actions necessary to protect public health, welfare, or the environment or to

24  prevent, abate, or minimize an actual or threatened release of hazardous

25  substances, pollutants or contaminants, or hazardous or solid waste on, at, or from

26  the Facility. Further, except as specifically provided for in this Consent Decree,

27  nothing herein shall prevent DTSC from seeking legal or equitable relief to enforce

28  the terms of this Consent Decree, from taking other legal or equitable actions as it

20

CONSENT DECREE

LA/40326858.3

PAGE 21/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1   deems appropriate and necessary, or from requiring Settling Defendants to perform

2   additional activities after the termination of this Consent Decree pursuant to the

3   Comprehensive Environmental Response, Compensation, and Liability Act

4   (CERCLA), the Health and Safety Code, the California Code of Regulations, title

5   22, or any other applicable law.

6       7.8    Settling Defendants' Covenant Not To Sue.  In consideration of

7   DTSC's Covenant Not To Sue in Paragraph 7.1 of this Consent Decree, the

8   Settling Defendants hereby covenant not to sue and not to assert any claims or

9   causes of action against DTSC, its authorized officers or employees, with respect

10   to any regulatory action undertaken by DTSC with respect to the Subject Property

11   from January 1, 2004 through the Effective Date of this Consent Decree.

12       7.9    Settling Defendants' Reservation of Rights.  The Covenant Not To

13   Sue set forth in Paragraph 7.8 and the Standstill Agreement set forth in

14   Paragraph 7.10 do not pertain to any matters other than those specifically

15   addressed therein and apply only to DTSC and do not extend to any other

16   department, agency, board or body of the State of California.  The Settling

17   Defendants reserve, and this Consent Decree is without prejudice to, all rights

18   against DTSC with respect to all other matters.

19       7.10    Settling Defendants' Standstill.  The Settling Defendants agree not to

20   assert any judicial claim against DTSC with respect to the Facility until the earlier

21   of:  (a) four (4) years from the Effective Date of this Consent Decree; or (b) the

22   date a complaint is served on Settling Defendants requiring the performance of

23   work, reimbursement of cleanup costs, or contribution towards costs associated

24   with cleanup of the Facility.

25       7.11    Tolling Agreement.  DTSC and Settling Defendants agree that all

26   statutes of limitations applicable as of the Effective Date to any rights, claims,

27   causes of action, counterclaims, crossclaims and defenses with respect to the

28   Facility that Settling Defendants could assert against DTSC as of the Effective

21

**CONSENT DECREE**

LA/40326858.3

1   Date shall be tolled for the period between the Effective Date and the Tolling

2   Termination Date, and this tolling period shall be excluded from all computations

3   of any applicable period of limitations.  Such potentially applicable statutes of

4   limitations that are tolled by this agreement include, without limitation, any

5   applicable time limits within which an action may be commenced against DTSC

6   under the provisions of the California Tort Claims Act, including, without

7   limitation, Section 945.6 of the California Government Code.

8   VIII.  EFFECT OF SETTLEMENT/ CONTRIBUTION PROTECTION

9        8.1    With regard to claims for contribution against Settling Defendants, the

10   Parties hereto agree, and by entering this Consent Decree the Court finds, upon

11   entry of this Consent Decree, that the Settling Defendants are entitled to protection

12   from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42

13   U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree.  The matters

14   addressed in this Consent Decree are:  (a) the Work to Be Performed by Settling

15   Defendants described herein, to the extent that such work is actually performed by

16   or on behalf of Settling Defendants and approved by DTSC; (b) Past Response

17   Costs; (c) Future Interim Response Costs; (d) Future DTSC Oversight Costs;

18   (e) interest on amounts referred to in (b), (c) and (d) above; and (f) compliance

19   with the ISE Order from its effective date through the date on which it is dismissed

20   as provided in this Consent Decree.

21        8.2    Nothing in this Consent Decree shall be construed to create any rights

22   in, or grant any cause of action to, any person not a party to this Consent Decree

23   with respect to the Facility.  Each of the Parties to this Consent Decree expressly

24   reserves, and this Consent Decree is without prejudice to, all rights (including, but

25   not limited to, any right to contribution, indemnification and/or reimbursement),

26   defenses, claims, remedies, demands, and causes of action that each party may

27   have with respect to any matter, transaction, or occurrence relating in any way to

28   the Facility against any person not a party hereto.

22

CONSENT DECREE

LA/40326858 3

PAGE 23/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

8.3    The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify DTSC in writing at least sixty (60) days prior to the initiation of any such suit or claim.

8.4    The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree, they will notify in writing DTSC within fifteen (15) days of service of the complaint on them. In addition, Settling Defendants shall notify DTSC within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

8.5    In any subsequent administrative or judicial proceeding initiated by one or more of the Plaintiffs for injunctive relief, recovery of response costs, or other appropriate relief relating to the Facility, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by DTSC in the subsequent proceeding were or should have been brought in the instant case.

IX.    FUTURE COOPERATION

9.1    The Parties recognize that the Settling Defendants represent a subset of those who may be responsible for response actions at the Subject Property. The Parties also recognize that this Consent Decree represents an interim step towards a more permanent solution to the long term operation and maintenance of the Subject Property that may include a component for additional responsible parties. The Parties agree to work in good faith towards this long term solution.

9.2    Additional Potentially Responsible Parties (PRPs).

(a)    DTSC issued notices of noncompliance to respondents to the ISE Order who are not Parties to this Consent Decree.

23

CONSENT DECREE

LA/40326858.3

PAGE 24/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1        (b)    If the Settling Defendants provide evidence and supporting

2   documentation to DTSC in accordance with Health and Safety Code section

3   25356.1.3 concerning the potential liability of any other person with respect to the

4   Facility, then DTSC will evaluate the information accordingly and take such

5   actions as deemed appropriate in DTSC's sole discretion.  These actions may

6   include, but are not limited to, notice letters, information requests, issuing final

7   determinations of non-compliance with the ISE Order, and judicial and

8   administrative enforcement actions, or no action.

9        (c)    DTSC shall work in good faith to provide the Settling

10   Defendants with reasonable access to those BKK documents concerning waste

11   disposal to which BKK allows DTSC to assume control.

12      9.3    Within seven (7) months of lodging of this Consent Decree, the

13   Settling Defendants shall provide written notice to DTSC of their intent to

14   commence negotiations on a settlement agreement that will supercede this Consent

15   Decree.

16      9.4    The Parties may, by mutual written agreement, and with approval of

17   the court, extend some or all of the obligations and related provisions of this

18   Consent Decree.

19      9.5    The Settling Defendants shall inform DTSC at least four (4) months

20   before the date the obligations of this Consent Decree terminate as to whether they

21   intend to extend this Consent Decree.

22   X.    GENERAL PROVISIONS

23      10.1   Project Coordinators.  Settling Defendants' Project Coordinator is

24   Roberto Puga, P.G. of Project Navigator, Ltd.  Settling Defendants shall promptly

25   notify DTSC in writing at least seven (7) working days before any proposed

26   change in the identity of the Project Coordinator.  Settling Defendants shall obtain

27   approval from DTSC before the new Project Coordinator performs any work under

28   this Consent Decree.  DTSC's Project Coordinator is Don Plain, Chief, Emergency

24

CONSENT DECREE

LA/40326858.3

PAGE 25/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1   Response and Special Projects Branch, Site Mitigation and Brownfields Reuse

2   Program. DTSC's Project Coordinator will be responsible for overseeing Settling

3   Defendants' implementation of this Consent Decree.

4         10.1.1   Each Project Coordinator shall be responsible for designating

5   a person to act in her/his absence. All communications between DTSC and

6   Settling Defendants concerning the Work to Be Performed shall be directed

7   through the Project Coordinators.

8         10.2   Project Engineer/Geologist. The Work to Be Performed pursuant to

9   this Consent Decree shall be under the direction and supervision of a qualified

10  professional engineer or a professional geologist in the State of California, with

11  expertise in hazardous substance site management and post-closure care of

12  landfills. On January 21, 2005, the Settling Defendants provided the name,

13  address, telephone number and resume of Mr. Roberto Puga, P.G. to serve as

14  interim Project Geologist along with the statement of qualifications of Mr. Puga's

15  firm, Project Navigator, Ltd. Within seven (7) days of a) the Effective Date of this

16  Consent Decree or b) the date upon which the Settling Defendants fully

17  commence the Essential Activities and Critical Task and other work pursuant to

18  Section IV herein, whichever is earlier, Settling Defendants shall submit

19  supplemental resumes and/or statements of qualifications as appropriate. Settling

20  Defendants shall promptly notify DTSC in writing at least seven (7) working days

21  before any proposed change in the identity of the Project Engineer/Geologist.

22  Settling Defendants shall obtain approval from DTSC before the new Project

23  Engineer/Geologist performs any work under this Consent Decree.

24        10.3   Monthly Summary Reports. After the end of the first month after a)

25  the Effective Date of this Consent Decree or b) the date upon which the Settling

26  Defendants fully commence the Essential Activities and Critical Task and other

27  work pursuant to Section IV herein, whichever is earlier, and on a monthly basis

28  thereafter, Settling Defendants shall submit to DTSC a Monthly Summary Report

25

CONSENT DECREE

LA/40326858.3

PAGE 26/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    of their activities under the provisions of this Consent Decree.  The reports shall be

2    received by DTSC by the 15th day of each month and shall describe:

3          (a)    Specific actions taken by or on behalf of Settling Defendants

4    during the previous calendar month;

5          (b)    Actions expected to be undertaken during the current calendar

6    month;

7          (c)    All planned activities for the next month;

8          (d)    Any problems or anticipated problems in complying with this

9    Consent Decree; and

10          (e)    All results of sample analyses, tests, and other data generated

11    under this Consent Decree during the previous calendar month, and any significant

12    findings from these data.

13        10.4    <u>Quality Assurance/Quality Control (QA/QC)</u>.  All sampling and

14    analysis conducted by Settling Defendants under this Consent Decree shall be

15    performed in accordance with QA/QC procedures submitted by Settling

16    Defendants and approved by DTSC pursuant to this Consent Decree.

17        10.5    <u>Submittals</u>.  All submittals and notifications from Settling Defendants

18    required by this Consent Decree shall be sent simultaneously to:

19            Don Plain, Chief **[three copies]**

20            Attention:  Andy Burrow
        Emergency Response and Special Projects Branch

21            Site Mitigation and Brownfields Reuse Program
        Department of Toxic Substances Control

22            8810 Cal Center Drive
        Sacramento, California  95826-3200

23

24        With a copy to:

25            Jose Kou, Branch Chief **[one copy]**
        Attention: Richard Allen

26            Southern California Permitting and Corrective Action Branch
        Hazardous Waste Management Program

27            Department of Toxic Substances Control
        1011 North Grandview Avenue

28            Glendale, California 91201-2205

26

CONSENT DECREE

LA/40326858.3

PAGE 27/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    10.6  Communications.  All approvals and decisions of DTSC made

2  regarding submittals and notifications will be communicated to Settling

3  Defendants in writing by the DTSC Project Coordinator or his/her designee.  No

4  informal advice, guidance, suggestions or comments by DTSC regarding reports,

5  plans, specifications, schedules or any other writings by Settling Defendants shall

6  be construed to relieve Settling Defendants of their obligation to obtain such

7  formal approvals as may be required by this Consent Decree.

8    10.7  DTSC Review and Approval.

9    10.7.1   All response actions taken pursuant to this Consent Decree

10  shall be subject to the approval of DTSC.  Settling Defendants shall submit all

11  deliverables required by this Consent Decree to DTSC.  DTSC shall revise and

12  approve or reject the deliverables within 45 days of its receipt thereof.  Once the

13  deliverables are approved by DTSC, they shall be deemed incorporated into, and

14  where applicable, enforceable under this Consent Decree.

15    10.7.2   If DTSC determines that any report, plan, schedule or other

16  document submitted for approval pursuant to this Consent Decree fails to comply

17  with this Consent Decree, subject to Settling Defendants' right to invoke dispute

18  resolutions pursuant to this Consent Decree, DTSC may:

19        (a)   Modify the document as deemed necessary and

20  approve the document as modified; or

21        (b)   Return comments to Settling Defendants with

22  recommended changes and a date by which Settling Defendants must submit to

23  DTSC a revised document incorporating the recommended changes.

24    10.8  Access for DTSC/Access to Property Owned by Others.

25    10.8.1   On November 4, 2004, BKK and DTSC entered into the

26  Right to Enter Agreement, which requires BKK to provide full access to Parcel 3

27  to DTSC and its consultants, contractors and designees (Exhibit B).

28

27

**CONSENT DECREE**

LA/40326858.3

1        10.8.2   For purposes of gaining access to the Facility, the Settling

2   Defendants are deemed DTSC's designees.

3        10.8.3   Settling Defendants shall cooperate with DTSC to provide

4   DTSC with access to the Subject Property consistent with applicable health and

5   safety plans, laws and regulations. Settling Defendants shall provide access to data

6   and facilitate access to laboratories used for analyses of the samples obtained

7   pursuant to this Consent Decree at all reasonable times to employees, contractors,

8   and consultants of DTSC. Nothing in this Paragraph is intended or shall be   .

9   construed to limit in any way the right of entry or inspection that DTSC or any

10   other agency may otherwise have by operation of any law.

11        10.8.4   The Settling Defendants shall also cooperate with DTSC to

12   provide access to any other person not a party to this Consent Decree as directed

13   by DTSC subject to applicable health and safety plans, laws and regulations.

14   DTSC shall work with Settling Defendants to assure that all activities at the

15   Subject Property are coordinated.

16        10.8.5   For property other than Parcel 3, to which access is required

17   for the implementation of this Consent Decree and which is owned or controlled by

18   persons other than Settling Defendants, Settling Defendants shall use best efforts to

19   secure from such persons access for Settling Defendants, as well as DTSC, its

20   representatives, and contractors, as necessary to effectuate this Consent Decree.

21   For purposes of this Paragraph, "best efforts" shall include the payment of

22   reasonable sums of money in consideration for access.

23        10.8.6   If any access required to complete the Work to Be Performed

24   is not obtained, Settling Defendants shall promptly notify DTSC and shall include

25   in that notification a summary of the steps Settling Defendants have taken to gain

26   access. DTSC may, as it deems appropriate, assist Settling Defendants in

27   obtaining access. Settling Defendants shall be subject to liability for costs incurred

28   by DTSC in obtaining access.       28

**CONSENT DECREE**

LA/40326858.3

PAGE 29/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1       10.9   Sampling, Data and Document Availability. Settling Defendants shall

2   permit DTSC and its authorized representatives to inspect and copy all sampling,

3   testing, monitoring or other data generated by Settling Defendants or on Settling

4   Defendants' behalf pursuant to this Consent Decree. Settling Defendants shall

5   submit all such data upon the request of DTSC. Copies shall be provided within

6   seven (7) days of receipt of DTSC's written request. Settling Defendants shall

7   inform DTSC at least seven (7) days in advance of all field sampling under this

8   Consent Decree, and shall allow DTSC and its authorized representatives to take

9   duplicates of any samples collected by Settling Defendants pursuant to this

10  Consent Decree. Settling Defendants shall maintain a central depository of the

11  data, reports, and other documents prepared pursuant to this Consent Decree.

12      10.10 Record Retention. All such data, reports and other documents shall be

13  preserved by Settling Defendants for a minimum of ten (10) years after the

14  conclusion of all activities under this Consent Decree. If DTSC requests that some

15  or all of these documents be preserved for a longer period of time, Settling

16  Defendants shall either comply with that request or deliver the documents to

17  DTSC, or permit DTSC to copy the documents prior to destruction. Settling

18  Defendants shall notify DTSC in writing, at least six (6) months prior to destroying

19  any documents prepared pursuant to this Consent Decree.

20      10.11 Government Liabilities. The State of California shall not be liable for

21  any injuries or damages to persons or property resulting from acts or omissions by

22  Settling Defendants, or related parties specified in Paragraph 10.20 (Parties

23  Bound), in carrying out activities pursuant to this Consent Decree, nor shall the

24  State of California be held as party to any contract entered into by Settling

25  Defendants or its agents in carrying out activities pursuant to this Consent Decree.

26      10.12 Extension Requests. If Settling Defendants are unable to perform any

27  activity or submit any document within the time required under this Consent

28  Decree, Settling Defendants may, prior to expiration of the time, request an

29

CONSENT DECREE

LA/4032685B 3

PAGE 30/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    extension of the time in writing. The extension request shall include a justification

2    for the delay. All such requests shall be in advance of the date on which the

3    activity or document is due.

4         10.13 <u>Extension Approvals</u>. If DTSC determines that good cause exists for

5    an extension, it will grant the request and specify a new schedule in writing.

6    Settling Defendants shall comply with the new schedule incorporated in this

7    Consent Decree.

8         10.14 <u>Recoverable Costs</u>. The Parties agree, and by entering this Consent

9    Decree the Court finds, that all payments made to DTSC for Past Response Costs

10    described in Paragraph 4.9 of this Consent Decree, all payments for Future Interim

11    Response Costs, and all payments for Future DTSC Oversight Costs pursuant to

12    this Consent Decree have been or are being made to reimburse DTSC for

13    recoverable response costs as defined under CERCLA and the HSAA, incurred by

14    DTSC with respect to releases or threatened releases of hazardous substances at the

15    Facility in a manner that was and is consistent with the NCP.

16         10.15 <u>Payments</u>. All payments made by the Settling Defendants pursuant to

17    this Consent Decree shall be made by a cashier's or certified check made payable

18    to the "Department of Toxic Substances Control", and bearing on its face the

19    project code for the Facility (Site # 300012-00) and the docket number of this

20    Consent Decree. On each check, Settling Defendants shall state: "For BKK

21    Costs". On each check, payments shall be further identified as either "BKK Future

22    DTSC Oversight Costs", "BKK Future Interim Response Costs", or "BKK Past

23    Response Costs", and shall be sent to:

24             Department of Toxic Substances Control
               Accounting/Cashier
25             400 P Street, 4th Floor
               P.O. Box 806
26             Sacramento, California 95812-0806

27         A photocopy of the check shall be sent concurrently to DTSC's Project

28    Coordinator.

30

CONSENT DECREE

LA/40326858.3

1    10.16 <u>Severability</u>. The requirements of this Consent Decree are severable,

2    and Settling Defendants shall comply with each and every provision hereof,

3    notwithstanding the effectiveness of any other provision.

4    10.17 <u>Incorporation of Plans, Schedules and Reports</u>. All plans, schedules,

5    reports, specifications and other documents that are submitted by Settling

6    Defendants pursuant to this Consent Decree are incorporated in this Consent

7    Decree upon DTSC's approval or as modified pursuant to Paragraph 10.7, DTSC

8    Review and Approval, and shall be implemented by Settling Defendants. Any

9    noncompliance with the documents incorporated in this Consent Decree shall be

10   deemed a failure or refusal to comply with this Consent Decree.

11   10.18 <u>Modifications</u>. This Consent Decree may only be modified in writing

12   by mutual agreement by the Parties and approval of the Court.

13   10.19 <u>Time Periods</u>. Unless otherwise specified, time periods begin from

14   the Effective Date of this Consent Decree.

15   10.20 <u>Parties Bound</u>. This Consent Decree applies to and is binding upon

16   DTSC and its successors-in-interest and the Settling Defendants, and their

17   corporate predecessors-in-interest, successors-in-interest and affiliated companies

18   identified in Exhibit G. Settling Defendants shall provide a copy of this Consent

19   Decree to all contractors, subcontractors, laboratories, and consultants that are

20   retained to conduct any work performed under this Consent Decree, within fifteen

21   (15) days after a) the Effective Date of this Consent Decree, b) the date upon

22   which the Settling Defendants fully commence the Essential Activities and Critical

23   Task and other work pursuant to Section IV herein, or c) the date of retaining their

24   services, whichever is later. Settling Defendants shall condition any such contracts

25   upon satisfactory compliance with this Consent Decree. Notwithstanding the terms

26   of any contract, Settling Defendants are responsible for compliance with this

27   Consent Decree and for ensuring that their successors-in-interest, affiliated

28

31

CONSENT DECREE

LA/40326858.3

PAGE 32/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    companies identified in Exhibit G, employees, contractors, consultants,

2    subcontractors, agents and attorneys comply with this Consent Decree.

3        10.21 <u>Joint and Several Obligations</u>. The obligations of the Settling

4    Defendants to carry out all activities and to make the payments required by this

5    Consent Decree are joint and several. In the event of failure of any one or more

6    Settling Defendants to conduct the Work to Be Performed pursuant to this Consent

7    Decree and/or to make the payments required under this Consent Decree, the

8    remaining Settling Defendants shall be responsible for such Work to Be Performed

9    and for such payments. In the event of the insolvency or other failure of any one

10   or more Settling Defendants to implement the requirements of this Consent

11   Decree, the remaining Settling Defendants shall complete all of the requirements.

12       10.22 <u>Change in Ownership</u>. No change in ownership or corporate or

13   partnership status relating to the Subject Property shall in any way alter Settling

14   Defendants' responsibility under this Consent Decree. No conveyance of title,

15   easement, or other interest in the Subject Property, or a portion of the Subject

16   Property, shall affect Settling Defendants' obligations under this Consent Decree.

17   Unless DTSC agrees that such obligations may be transferred to a third party,

18   Settling Defendants shall be responsible for and liable for any failure to carry out

19   all activities required of Settling Defendants by the terms and conditions of this

20   Consent Decree, regardless of Settling Defendants' use of employees, agents,

21   contractors, or consultants to perform any such tasks. Settling Defendants shall

22   provide a copy of this Consent Decree to any subsequent owners or successors

23   before ownership rights or stock or assets in a corporate acquisition are transferred.

24   XI.    DELAY IN PERFORMANCE/STIPULATED PENALTIES

25       11.1   For each day that the Settling Defendants fail to deliver a deliverable

26   in a timely manner, fail to perform work of acceptable quality, or otherwise fail to

27   perform the work required by this Consent Decree, including Exhibits C and D,

28   Settling Defendants shall be liable for stipulated penalties as set forth below.

32

CONSENT DECREE

LA/40326858.3

PAGE 33/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1    Penalties begin to accrue on the day that the deliverable or performance is due, and

2    continue to accrue until one of the following occurs: a) DTSC notifies Settling

3    Defendants that it will conduct the work; or b) Settling Defendants submit the

4    deliverable or perform the work in question and DTSC determines that the

5    document or work is acceptable to DTSC (whichever is earlier).  Payment of any

6    Stipulated Penalties by Settling Defendants shall be due within thirty (30) days of

7    receipt of a demand letter from DTSC.

8              11.1.1    For the following deliverables or work, stipulated penalties

9    shall accrue in the amount of $500.00 per day, per violation, for the first seven (7)

10   days of noncompliance, and $750.00 per day, per violation thereafter:

11                        (a)    Monthly reports as required by Paragraph 10.3; or

12                        (b)    Emergency response report as required by

13   Paragraph 4.4.

14             11.1.2    For the following major deliverables or work, stipulated

15   penalties shall accrue in the amount of $1,000 per day, per violation, for the first

16   seven (7) days of noncompliance, and $2,500 per day, per violation thereafter,:

17                        (a)    Performance of any Essential Activity identified in

18   Exhibit C; or

19                        (b)    Performance of the Critical Task identified in

20   Exhibit D; or

21                        (c)    Immediately notifying DTSC of an emergency or

22   taking immediate action to address an emergency as set forth in Paragraph 4.4.

23   (Disputes over the appropriate response to be taken should be resolved through the

24   dispute resolution provisions of this Consent Decree and shall not subject the

25   Settling Defendants to Stipulated Penalties).

26        11.2  If the payment of Future Interim Response Costs required of the

27   Settling Defendants by this Consent Decree are not made by the time specified in

28

                                    33
                            CONSENT DECREE

LA/40326858.3

PAGE 34/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

1   Paragraph 4.7, the Settling Defendants shall be liable, for the following amounts

2   for each date of delay in payment:

3       Days of Delay          Payment per Day of Delay

4       1-14                   $1,000/day

5       15-60               $2,500/day

6       Beyond 60 days       $5,000/day

7       11.3   Settling Defendants may dispute DTSC's right to the stated amount of

8   penalties by invoking the dispute resolution procedures under Paragraph 14.1

9   herein.  Penalties shall accrue but need not be paid during the dispute resolution

10  period.  If Settling Defendants do not prevail upon resolution, all penalties shall be

11  due to DTSC within thirty (30) days of resolution of the dispute.  If Settling

12  Defendants prevail upon resolution, no penalties shall be paid.

13      11.4   These stipulated penalties provisions do not preclude DTSC from

14  pursuing any other legal remedies or sanctions that are available to DTSC because

15  of the Settling Defendants' failure to comply with this Consent Decree.  Payment

16  of stipulated penalties does not alter Settling Defendants' obligation to complete

17  performance under this Consent Decree.

18  XII.   PUBLIC COMMENT

19      12.1   This Consent Decree shall be subject to a public comment period for

20  not less than thirty (30) days after lodging with the Court.  DTSC may modify or

21  withdraw its consent to this Consent Decree if comments received disclose facts or

22  considerations that indicate that this Consent Decree is inappropriate, improper or

23  inadequate.

24  XIII.  EFFECTIVE DATE

25      13.1   The Effective Date of this Consent Decree shall be the date on which

26  it is entered by the Court.

27

28

34

LA/40326858 3

PAGE 35/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

XIV.  <u>DISPUTE RESOLUTION</u>

14.1   Any dispute that arises between the Parties with respect to an obligation under this Consent Decree shall, in the first instance, be the subject of good faith negotiations among the Parties.  The Parties agree that they shall use their best efforts to resolve any dispute informally.  In the absence of agreement, any Party may submit the matter to the Court for resolution.

XV.  <u>SIGNATORIES</u>

15.1   Each undersigned representative of the Parties to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Parties to this Consent Decree.

15.2   This Consent Decree may be executed and delivered in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, but such counterparts shall together constitute one and the same document.

SO ORDERED , APPROVED,  SIGNED, AND ENTERED THIS __6__ of __March_____, 2006.


_____//original signed by//_____

THE HONORABLE CHRISTINA A. SNYDER
UNITES STATES DISTRICT JUDGE

LA/40326858.3

XV.   <u>SIGNATORIES</u>

15.1    Each undersigned representative of the Parties to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Parties to this Consent Decree.

15.2    This Consent Decree may be executed and delivered in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, but such counterparts shall together constitute one and the same document.

FOR THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL

Dated:   October 25, 2005            By: //Original Signed By//
                                          TIMOTHY J. SWICKARD
                                          Chief Counsel

SETTLING DEFENDANTS' SIGNATURE PAGES FOLLOW:

CONSENT DECREE

1    AMERICAN HONDA MOTOR CO., INC.

2

3

4    DATE:   October 7, 2005           By: //Original Signed By//
5                                          SIGNATURE

6                                          TIMOTHY J. CONLEY
7                                          NAME (printed or typed)

8
9                                          Vice President and General Counsel
10                                         TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36

LA/40326858.3

1    ANADARKO E&P COMPANY LP

2

3

4    DATE:    October 25, 2005        By: //Original Signed By//
5                                          SIGNATURE

6
                                          DAVID J. OWENS
7                                          NAME (printed or typed)

8
                                          Associate General Counsel
9                                          TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

LA/40326858.3

1    ATLANTIC RICHFIELD COMPANY, on behalf of itself and its affiliated entities

2

3

4    DATE:    October 20, 2005        By: //Original Signed By//

5                                         SIGNATURE

6
                                         H.C. WINSOR
7                                        NAME (printed or typed)

8
                                         Regional Manager
9                                        TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38

CONSENT DECREE

1    BAYER CROPSCIENCE INC.

2

3

4    DATE:    October 17, 2005          By: //Original Signed By//

5                                            SIGNATURE

6

7                                            BRIAN A. SPILLER
                                             NAME (printed or typed)
8

9                                            Chairman, Stauffer Management
                                             Company LLC
10                                           TITLE (printed or typed)

11                                           AS AUTHORIZED

12                                           LITIGATION AGENT FOR

13                                           BAYER CROPSCIENCE INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

LA/40326858.3

1  CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY, a California corporation, on behalf of itself and on behalf of:

2

3  Chevron Oronite Company LLC, a Delaware limited liability company (successor-in-interest to Chevron Chemical Company); Chevron Corporation, a Delaware corporation (for Standard Oil Company of California, k/n/a Chevron Corporation,

4  a Delaware corporation); Chevron U.S.A. Inc., a Pennsylvania corporation (for all Chevron affiliates involved in production, refining, and marketing); Chevron

5  U.S.A. Inc., a Pennsylvania corporation (for Gulf Oil Corporation, k/n/a Chevron U.S.A. Inc., a Pennsylvania corporation, and all other Gulf affiliates); Texaco

6  Downstream Properties Inc., a Delaware corporation (successor-in-interest to Texaco affiliates involved in refining, marketing, and research); Chevron U.S.A.

7  Inc., a Pennsylvania corporation (successor-in-interest to Texaco Exploration & Production Inc., and all other Texaco affiliates involved in production); Texaco

8  Downstream Properties Inc., a Delaware corporation (successor-in-interest to Getty Oil Company affiliates involved in refining and marketing operations); Chevron

9  U.S.A. Inc., a Pennsylvania corporation (successor-in-interest to Getty Oil Company affiliates involved in production); Chevron Pipe Line Company, a

10  Delaware corporation,; Kewanee Industries Inc., a Delaware corporation (successor-in-interest to Harshaw Chemical Company and its affiliates); Texaco

11  Downstream Properties Inc., a Delaware corporation (successor-in-interest to Basin Petroleum and its affiliates involved in refining and marketing operations);

12  Chevron U.S.A. Inc., a Pennsylvania corporation (successor-in-interest to Basin Petroleum and its affiliates involved in production); and Texaco Inc, a Delaware

13  corporation

14

15

16  DATE:   October 20, 2005          By: //Original Signed By//

17                                        SIGNATURE

18

19                                        ROBERT R. JOHN
                                          NAME (printed or typed)

20

21                                        Assistant Secretary
                                          TITLE (printed or typed)

22

23

24

25

26

27

28

LA/40326858.3

1    HUNTINGTON BEACH COMPANY, a California corporation

2

3

4    DATE:   October 18, 2005          By: //Original Signed By//

5                                          SIGNATURE

6

7                                          FRANK G. SOLER

                                           NAME (printed or typed)

8

9                                          Assistant Secretary

                                           TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

41

CONSENT DECREE

1   McFARLAND ENERGY, INC, a Delaware corporation (successor-in-interest to
    Seaboard Oil Company)

2

3

4

5   DATE:   October 18, 2005         By: //Original Signed By//
                                         SIGNATURE

6

7                                        FRANK G. SOLER
                                         NAME (printed or typed)

8

9                                        Assistant Secretary
                                         TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA/40326858.3

1    CITY OF LOS ANGELES, ACTING BY AND THROUGH THE LOS ANGELES
2    DEPARTMENT OF WATER AND POWER

3

4

5    DATE: _____          By: //Original Signed By//_____
                                              SIGNATURE
6

7                                             **[PENDING]**_____
8                                             NAME (printed or typed)

9                                             _____
10                                            TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

43

CONSENT DECREE

1    CONOCOPHILLIPS COMPANY, on behalf of itself and its affiliated entities

2

3

4    DATE:    October 26, 2005        By: //Original Signed By//_____
                                          SIGNATURE
5

6                                         WILLIAM A. KITCHEN_____
7                                         NAME (printed or typed)

8                                         Manager, Risk Management and_____
9                                         Remediation_____
10                                        TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

44

CONSENT DECREE

LA/40326858.3

1    DUCOMMUN AEROSTRUCTURES, INC.

2

3

4    DATE:    October 31, 2005         By: //Original Signed By//
5                                          SIGNATURE

6                                          JAMES S. HEISER
7                                          NAME (printed or typed)

8

9                                          Secretary
10                                         TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

45

1  EXXON MOBIL CORPORATION, on behalf of itself, and its subsidiaries and
2  affiliated entities

3

4

5  DATE:   __October 19, 2005__          By: __//Original Signed By//_____
                                              SIGNATURE
6

7                                             __ZANE K. BOLEN_____
8                                             NAME (printed or typed)

9                                             __Area Manager Superfund_____
10                                            __for_____
11                                            __Andrew Warrell, Global Manager,__
                                              __Major Projects_____
12                                            TITLE (printed or typed)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

46

LA/40326858.3

1    GENERAL MOTORS CORPORATION

2

3

4    DATE:    October 10, 2005        By: //Original Signed By//

5                                        SIGNATURE

6                                        MICHELLE T. FISHER

7                                        NAME (printed or typed)

8

9                                        Attorney

10                                       TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA/40326858.3

1  HONEYWELL INTERNATIONAL, INC., on behalf of itself and its affiliated
2  entities

3

4

DATE:   __October 14, 2005__      By: __//Original Signed By//_____
5                                          SIGNATURE

6

7                                          __TROY J. MEYER_____
8                                          NAME (printed or typed)

9                                          __Remediation Portfolio Director__
10                                         TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA/40326858.3

1   NATIONAL STEEL AND SHIPBUILDING COMPANY

2

3

4   DATE:  ___October 7, 2005_____      By: //Original Signed By//_____

5                                           SIGNATURE

6                                           LANE L. MCVEY_____

7                                           NAME (printed or typed)

8

9                                           Vice President, Business Affairs and___
                                            Law_____
10                                          TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA/40326858.3

1  NORTHROP GRUMMAN CORPORATION, on behalf of itself and its affiliated
2  entities

3

4

5  DATE:   October 17, 2005          By: //Original Signed By//
                                         SIGNATURE
6

7                                        KRAIG H. SCHEYER
8                                        NAME (printed or typed)

9                                        Vice President, Administrative Services
10                                       TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

1    QUEMETCO, INC.

2

3

4    DATE:    October 10, 2005        By: //Original Signed By//

5                                         SIGNATURE

6                                         DANIEL M. CROWLEY

7                                         NAME (printed or typed)

8

9                                         Attorney

10                                        TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

LA/40326858.3

1    ROHR, INC., on behalf of itself and its affiliated entities

2

3

4    DATE:   __October 7, 2005___    By: //Original Signed By//_____

5                                         SIGNATURE

6                                         GREGORY B. PETERS_____

7                                         NAME (printed or typed)

8

9                                         Vice President and General Manager___
                                          Operations_____
10                                        TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

1    CHEMICAL WASTE MANAGEMENT, INC., on behalf of itself and its affiliated
2    entities

3

4

5    DATE:   __October 11, 2005__          By: //Original Signed By//_____
                                              SIGNATURE
6

7                                            STEVEN D. RICHTEL_____
                                             NAME (printed or typed)
8

9                                            Area Director, CSMG_____
10                                           TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

53
CONSENT DECREE

1    SHELL OIL COMPANY, on behalf of itself and its affiliated entities

2

3

4    DATE:   <u>October 13, 2005</u>        By: <u>//Original Signed By//</u>
5                                            SIGNATURE

6
                                            <u>HECTOR A. PINEDA</u>
7                                            NAME (printed or typed)

8
                                            <u>Assistant Corporate Secretary</u>
9                                            TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

LA/40326858.3

1    SOUTHERN CALIFORNIA EDISON COMPANY

2

3

4    DATE:   October 19, 2005          By: //Original Signed By//
5                                           SIGNATURE

6
                                           STEPHEN E. PICKETT
7                                           NAME (printed or typed)

8
                                           Senior Vice President and
9                                           General Counsel
10                                          TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

LA/40326858.3

1  THUMS LONG BEACH COMPANY

2

3

4  DATE: ___October 19, 2005___    By: //Original Signed By//_____
5                                      SIGNATURE

6
                                    F. E. KOMIN_____
7                                   NAME (printed or typed)

8
                                    President/General Manager_____
9                                   TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

1    UNION CARBIDE CORPORATION

2

3

4    DATE:    __October 10, 2005__         By: __//Original Signed By//_____
                                                 SIGNATURE
5

6                                              __SANDI VAN WORMER_____
7                                              NAME (printed or typed)

8

9                                              __Authorized Representative_____
                                                 TITLE (printed or typed)
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

1  UNION OIL COMPANY OF CALIFORNIA, a California corporation, on behalf
2  of itself and its affiliated entities

3

4

5  DATE:   <u>October 20, 2005</u>   By: <u>//Original Signed By//</u>
                                       SIGNATURE

6

7                                       <u>JAMES J. DEAN</u>
                                       NAME (printed or typed)
8

9                                       <u>General Manager</u>
10                                      TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

58

LA/40326858.3

1   WASHINGTON MUTUAL BANK, on behalf of itself and its affiliated entities

2

3

4   DATE:   October 21, 2005          By: //Original Signed By//
5                                          SIGNATURE

6
                                           FAY L. CHAPMAN
7                                          NAME (printed or typed)

8
                                           Senior Executive Vice President
9                                          TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

LA/40326858.3

1  WASTE MANAGEMENT COLLECTION AND RECYCLING, INC, on behalf of
   itself and its affiliated entities

2

3

4

5  DATE:  ___October 10, 2005___          By: //Original Signed By//_____
                                              SIGNATURE

6

7                                             STEVEN D. RICHTEL_____
                                              NAME (printed or typed)

8

9                                             Area Director, CSMG_____
                                              TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

60

CONSENT DECREE

LA/40326858.3

1   WESTERN WASTE INDUSTRIES, on behalf of itself and its affiliated entities

2

3

4   DATE:   __October 10, 2005__         By: __//Original Signed By//_____

5                                            SIGNATURE

6                                            __STEVEN D. RICHTEL_____

7                                            NAME (printed or typed)

8

9                                            __Area Director, CSMG_____

10                                           TITLE (printed or typed)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

LA/40326858.3

1    XEROX CORPORATION

2

3

4    DATE:    October 24, 2005        By: //Original Signed By//
5                                          SIGNATURE

6
                                          PATRICIA A. CALKINS
7                                          NAME (printed or typed)

8
                                          Vice President EH&S
9                                          TITLE (printed or typed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

LA/40326858.3